**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1452-23

MARTIN LAW FIRM, LLC,

    Plaintiff-Respondent,

v.

KIRK LOURY,

    Defendant-Appellant.

_____

Argued March 10, 2026 – Decided July 15, 2026

Before Judges Sumners, Susswein and Augostini.

On appeal from the Superior Court of New Jersey, Law Division, Burlington County, Docket No. L-1528-19.

Kirk Loury, self-represented appellant, argued the cause (Scott B. Piekarsky, on the briefs).

John L. Slimm argued the cause for respondent (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

PER CURIAM

This is the second time we have addressed this dispute, which returns to us in the context of a collection action brought by plaintiff Martin Law Firm (MLF) against defendant Kirk Loury, its former client and plaintiff in the underlying employment matter against Loury's former employer, Concord Equity Group Advisors LLC (Concord).  In the present action, MLF seeks to recover the legal fees and costs of representing Loury in a second bench trial against his former employer, at the end of which Loury won a damages award in the same amount as he had won in the first bench trial.  (We reversed the first bench trial verdict and remanded for a new trial.)  Loury filed a counterclaim against MLF for legal malpractice, alleging that he should have received an even higher award in the second bench trial.  The trial court dismissed Loury's counterclaim with prejudice before convening the collection trial, and the jury ruled in MLF's favor.

Loury appeals the trial court's pretrial rulings barring his liability expert from testifying in support of his legal malpractice counterclaim, denying his motion for summary judgment on that counterclaim, and denying his motion to amend his counterclaim by adding attorney Joseph A. Martin as a codefendant. (Martin represented Loury in both bench trials, albeit with different law firms.) After reviewing the record in light of the governing legal principles, we affirm.

2

A-1452-23

We presume the parties are familiar with the facts and procedural history of this protracted litigation. We recount the pertinent facts as needed in our discussion of each contention raised by Loury on appeal.

We first consider Loury's contention that the trial court erred by striking the report of his proposed expert, Bennett J. Wasserman, and by precluding Wasserman from testifying at trial. We hold that the trial court did not abuse its discretion in granting MLF's motion to preclude Wasserman, as his opinions were too speculative regarding proximate cause of any damages resulting from Martin's alleged professional negligence.

A.

The exclusion or admission of an expert's testimony or report is "committed to the sound discretion of the trial court." Townsend v. Pierre, 221 N.J. 36, 52 (2015). On appellate review, a trial judge's grant or denial of a motion to bar expert testimony is entitled to a "deferential approach," and we review the trial judge's decision "against an abuse of discretion standard." Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011). The court will reverse a trial court's exercise of discretion only "if the discretionary act was not premised upon consideration of all relevant factors, was based upon

consideration of irrelevant or inappropriate factors, or amounts to a clear error in judgment." Masone v. Levine, 382 N.J. Super. 181, 193 (App. Div. 2005). Stated differently, "[a]n abuse of discretion occurs when a decision was 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Wear v. Selective Ins. Co., 455 N.J. Super. 440, 459 (App. Div. 2018) (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)).

Turning to the pertinent substantive legal principles, "[a] legal malpractice claim is 'grounded in the tort of negligence.'" Nieves v. Off. of the Pub. Def., 241 N.J. 567, 579 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). "[A] legal malpractice action has three essential elements: '(1) the existence of an attorney-client relationship creating a duty of care by the . . . attorney, (2) the breach of that duty . . . and (3) proximate causation of the damages claimed by the [client].'" Jerista v. Murray, 185 N.J. 175, 190-91 (2005) (quoting McGrogan, 167 N.J. at 425).

This appeal focuses on the proximate causation element. Where the attorney breaches a duty of care, the breach is answerable in damages only for losses which are proximately caused by the negligence. "The test of proximate

cause is satisfied where the negligent conduct is a substantial contributing factor in causing the loss." Lamb v. Barbour, 188 N.J. Super. 6, 12 (App. Div. 1982).

To establish proximate causation in a legal malpractice action, the former client must first establish causation in fact, which "requires proof that the result complained of probably would not have occurred 'but for' the negligent conduct of the [attorney]." Conklin v. Hannoch Weisman, 145 N.J. 395, 417 (1996) (quoting Vuocolo v. Diamond Shamrock Chems. Co., 240 N.J. Super. 289, 295 (App. Div. 1990)). "Proximate cause connotes not nearness of time or distance, but closeness of causal connection." Powers v. Standard Oil Co., 98 N.J.L. 730, 732 (Sup. Ct.) (quoting Del., Lackawanna & W.R.R. Co. v. Salmon, 39 N.J.L. 299, 308 (Sup. Ct. 1877)), aff'd, 98 N.J.L. 893 (E. & A. 1923). It thus requires a showing that the malpractice was a "substantial factor in bringing about" an injury. Conklin, 145 N.J. at 419 (internal quotation marks and citation omitted). In other words, it is the client's burden "to show what injuries were suffered as a proximate consequence of the attorney's breach of duty." 2175 Lemoine Ave. Corp. v. Finco, Inc., 272 N.J. Super. 478, 488 (App. Div. 1994).

Furthermore, actual damages must be incurred. Sommers v. McKinney, 287 N.J. Super. 1, 10 (App. Div. 1996). "Actual damages are those that are real and substantial as opposed to speculative." Grunwald v. Bronkesh, 131 N.J.

5

483, 495 (1993). The burden, moreover, is on the client to show, by a preponderance of the evidence, what actual damages were suffered as a result of their attorney's negligence, Lieberman v. Emps. Ins. of Wausau, 84 N.J. 325, 342 (1980), and, importantly for present purposes, that proof requirement is not satisfied by mere "conjecture, speculation, surmise[,] or guess," Long v. Landy, 35 N.J. 44, 54 (1961).

In sum, the client must "show what injuries were suffered as a proximate consequence of the attorney's breach of duty," ordinarily measured by "the amount that a client would have received but for the attorney's negligence." Lemoine, 272 N.J. Super. at 488. Accord Gautam v. De Luca, 215 N.J. Super. 388, 397 (App. Div. 1987) (quoting Lieberman, 84 N.J. at 342). To prove actual loss, "the client must demonstrate that he or she would have prevailed, or would have won materially more . . . but for the alleged substandard performance." Lerner v. Laufer, 359 N.J. Super. 201, 221 (App. Div. 2003). "The most common way to prove the harm inflicted by such malpractice is to proceed by way of a 'suit within a suit' in which a [client] presents the evidence that would have been submitted at a trial had no malpractice occurred." Garcia v. Kozlov, Seaton, Romanini & Brooks, PC, 179 N.J. 343, 358 (2004). Finally, "[i]t is well-settled [that] expert testimony is generally required in legal malpractice cases."

Kronfeld v. Malone, 482 N.J. Super. 474, 490 (App. Div. 2025); see also ibid. (holding that "without expert testimony," the plaintiff's legal malpractice claims "failed as a matter of law").

B.

To briefly summarize the pertinent facts, during the second bench trial in the underlying employment matter, Lee Argush, Concord's former CEO, testified to a new estimate of Loury's entitled compensation that was lower than the one he offered in the first bench trial. In his expert report, Wasserman opined that Martin was professionally negligent for failing to recall Loury as a rebuttal witness to challenge Argush's testimony. Specifically, Wasserman claimed that if Loury had been recalled, Loury could have "clarified" his own previous testimony on damages and thereby ended up with a higher amount than he received after the first trial.

In its oral decision precluding Wasserman from testifying, the trial court relied on the following colloquy from Wasserman's deposition:

> Q.    [MLF's counsel] Well, you have to admit, don't you, that his [Loury's] testimony then if the attorney put him back on the stand to testify on rebuttal, would have been completely different on the damages theory . . . in the first trial and in the second trial on the case-in-chief?

7

A.     [Wasserman] No . . . because I clarified earlier that his testimony would have addressed Mr. Argush's testimony . . . in a rebuttal of Mr. Argush's testimony.

It would not have changed Mr. Loury's initial testimony.  It would have clarified.  It would have explained it, would have elaborated on Mr. Argush's testimony.

Q.     But if it did all that, he would have been bound, wouldn't he, by what he said in his deposition, what he said before [the first judge], what he said in the case-in-chief before [the second judge];[1] isn't that true?

A.     But in the face of newly discovered evidence, Mr. Loury is entitled to give clarifying evidence. . . .

. . . .

Q.     So why would [Loury] testify in response and open himself up to more cross-examination . . . when he already had solid testimony in his deposition and in the first trial and in the case-in-chief in the second trial.  Why would you ever do that?

A.     Because there was an opportunity based on Mr. Argush's testimony to enhance the damage award.

Q.     How would that have enhanced the damage award[] unless[] he changed his theory of damages that

---

[1]  We use "the first judge" to refer to the judge who presided over the first bench trial in the underlying employment matter.  We use "the second judge" to refer to the judge who presided over the second bench trial in that matter, following our remand.

A-1452-23

he set forth in his deposition in the first trial and in the case-in-chief [i]n the second trial?

A. By simply following through and continuing the line of reasoning that Mr. Argush provided. And then you have two different theories for the court to choose from.

[The judge] can choose from the lesser or he can choose from the greater. So you have to give the court that choice.

. . . .

So it would have been to the service of the court to provide that information to him, to Judge Quin[n], and he could have either accepted it or rejected it.

Q. But Mr. Wasserman, Judge Quin[n] did reject the theory of Argush and accepted the theory of Loury in his decision?

A. Okay.

The trial court explained that this passage

is particularly important here because what [Wasserman] really says in his . . . causation opinion is that had Mr. Loury been put back on the stand, it would have provided this service to the court, to inform the judge after Mr. Argush testified, so that the judge could have either accepted or rejected the testimony between Argush and Mr. Loury. Then the follow-up question is, but, Mr. Wasserman, [the second judge] did reject the theory of Argush and accepted the theory of Loury in his decision. And the expert's response is okay.

So that really leads to the question of how -- if that's the case, how would this testimony have bolstered or added anything? And this expert doesn't say -- doesn't provide any information, any why or wherefore in that regard. Instead, his testimony really contradicts his theory.

Next, the trial court found that even if Loury's "clarifying rebuttal testimony" would have "bolstered" the second judge's decision,

> the question is, how do we then make the jump to the damages that Mr. Loury alleges? There's nothing in the record . . . no opinion from either of these experts [Wasserman on liability or Loury on damages] to establish that this clarifying testimony would have resulted in damages A, B, and C. It's speculative only. And as recognized even by Mr. Wasserman in his deposition testimony here, he agrees that in a legal malpractice case in New Jersey, you have to show actual damages of a plaintiff and not speculative ones. That's on pages [fifty-four] and [fifty-five] of his deposition testimony.

The court concluded that this was

> a situation where it can't be established through the record evidence that this testimony would have in any way bolstered or changed . . . the decision in favor of Mr. Loury or changed the decision of [the second judge] because [that judge] had already rejected the theory of Argush and accepted the theory of Loury and these expert reports can't establish that any damages that are set forth by Mr. Loury are related to this bolstered testimony.

A-1452-23

The trial court doubled down on its rationale in responding to Loury's ensuing motion for reconsideration. The court emphasized that "there was nothing in the record to establish that the clarifying testimony, which Mr. Loury claims was necessary here at the underlying trial . . . would have resulted in . . . specific damages." Further, the court in its reconsideration opinion reasoned "it could not be established through record evidence that the testimony would have bolstered or changed the decision . . . in favor of Mr. Loury . . . [as his] own expert concedes . . . because [the second judge] had already rejected the theory of Argush and accepted the theory of Loury." The court also found that the expert reports "cannot establish that any damages claimed by Loury stem from the proposed bolstered testimony."

Loury claims on appeal that the trial court did not undertake a net opinion evaluation but instead placed itself in the role of the trier of fact and judged the credibility of Wasserman's opinions. We disagree.

N.J.R.E. 702 provides that expert testimony will only be admissible if it "will assist the trier of fact to understand the evidence or determine a fact in issue." N.J.R.E. 703 states that an expert's opinion must be based in facts or data "perceived by or made known to the expert." Thus, an expert's bare conclusions, unsupported by factual evidence or other data, are inadmissible as

11

a mere "net opinion." State v. Townsend, 186 N.J. 473, 494-95 (2006). An expert's opinion may be deemed a net opinion, moreover, when the expert "does not demonstrate the soundness of a methodology, both in terms of its approach to reasoning and to its use of data." In re Accutane Litig., 234 N.J. 340, 400 (2018). Stated another way, an expert must "give the why and wherefore" that supports their opinion, "rather than a mere conclusion." Pierre, 221 N.J. at 54 (quoting Borough of Saddle River v. 66 E. Allendale, LLC, 216 N.J. 115, 144 (2013)).

Loury relies on Carbis Sales, Inc. v. Eisenberg, 397 N.J. Super. 64 (App. Div. 2007), for the proposition that he should have been permitted to proceed by way of a "suit within a suit" to show the jury the harm inflicted by Martin's malpractice in the underlying bench trials. He also relies on Rubanick v. Witco Chemical Corp., 242 N.J. Super. 36, 55 (App. Div. 1990), modified on other grounds, 125 N.J. 421 (1991), for the proposition that it was for the jury, and not the judge, to either accept or reject the methodology used by his experts.

Loury's reliance on these cases is misplaced, as the trial court did not place itself in the role of the trier of fact. Rather, the trial court focused on the expert's unfounded speculation and unquantified possibilities for establishing any proximate cause from Martin's alleged malpractice. See Pierre, 221 N.J. at 55

("An expert's conclusion 'is excluded if it is based merely on unfounded speculation and unquantified possibilities.'") (quoting Grzanka v. Pfeifer, 301 N.J. Super. 563, 580 (App. Div. 1997)).  Stated another way, while the trial court's oral decision did not explicitly reference N.J.R.E. 702/703 or the "net opinion" rule, the court concluded that both Loury and Wasserman's opinions were too speculative with respect to proximate cause and the value of any actual loss attributable to Martin's alleged malpractice—a conclusion supported by substantial evidence in the record.  Furthermore, the court properly applied our net opinion caselaw, holding, for instance, that Wasserman failed to provide any "why or wherefore" for his conclusion on causation.  See Pierre, 221 N.J. at 54 (requiring that an expert "give the why and wherefore" that supports their opinion, "rather than a mere conclusion" (quoting Borough of Saddle River, 216 N.J. at 144)).

Moreover, as the trial court found, if Loury had testified in rebuttal to Argush, it would not have changed the second judge's final decision, as he awarded the same amount to Loury as had the first judge.  More importantly, the second judge awarded the same amount after finding both that Argush's testimony "was not credible" and "that the amount of reasonable damages is not in contest and has previously been determined to be the appropriate amount in

13

controversy as identified in the prior [c]ourt decision and the Appellate remand." In these circumstances, we are satisfied that the trial court did not abuse its discretion in granting MLF's motion to preclude Wasserman from testifying.

II.

We turn next to Loury's contention the trial court erred by denying his summary judgment motion on count two of his counterclaim. Applying de novo review, we agree with the trial court that, with or without admission of any expert testimony, and after giving all favorable inferences to MLF, there are genuine issues of material fact that preclude summary judgment.

We begin our analysis by acknowledging the governing legal principles. Appellate courts review a denial of summary judgment de novo, applying the same standard as the motion judge. Samolyk v. Berthe, 251 N.J. 73, 78 (2022); Rios v. Meda Pharm., Inc., 247 N.J. 1, 13 (2021). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). By contrast, "Rule 4:46-2 dictates that a court should deny a summary judgment motion only where the party opposing the motion has come forward with evidence that

creates a 'genuine issue as to any material fact challenged.'" Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529 (1995) (quoting R. 4:46-2). See Conforti v. County of Ocean, 255 N.J. 142, 162 (2023) (courts "consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party" (quoting Statewide Ins. Fund v. Star Ins. Co., 253 N.J. 119, 125 (2023))). "It [is] not the court's function to weigh the evidence and determine the outcome but only to decide if a material dispute of fact exist[s]." Rowe v. Mazel Thirty, LLC, 209 N.J. 35, 50 (2012) (quoting Gilhooley v. County of Union, 164 N.J. 533, 545 (2000)). "[A] trial court should never decide on its merits a dispute on which a rational jury could go either way." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3.2 on R. 4:46-2 (2026). See, e.g., Davin, LLC v. Daham, 329 N.J. Super. 54, 70-71 (App. Div. 2000) (denying summary judgment on legal malpractice claim based on conflicting certifications of experts).

To determine whether there is a genuine issue of material fact, the court must ascertain "what reasonable conclusions a rational jury can draw from the evidence." Brill, 142 N.J. at 535. The court "must accept as true all evidence that supports the position of the party defending against the motion" (here, MLF)

and accord that party "the benefit of all legitimate inferences which can be deduced therefrom." Ibid. (quoting Lanzet v. Greenberg, 126 N.J. 168, 174 (1991)). "[I]f reasonable minds could differ, the motion must be denied." Ibid. (quoting Lanzet, 126 N.J. at 174). That is, "[a]n issue of fact is genuine only if . . . the evidence submitted by the parties on the motion, together with all legitimate interferences therefrom favoring the non-moving party, would require submission of the issue to the trier of fact." R. 4:46-2(c).

In this instance, Loury filed a summary judgment motion on count two of his counterclaim against MLF. Count two, titled "Breach of Fiduciary Duty Failure to Pursue an Increase in the 'Good Reason' Severance Award as a Result of Concord's Testimony During the Second Trial" (emphasis omitted and capitalization altered), alleged that "[p]laintiff" incompetently allowed Argush in the second bench trial to broaden the employment agreement's definition of "revenue" without sufficiently cross-examining him on this issue, as Loury had requested in two emails, or calling Loury as a rebuttal witness. Loury asserts that his counsel breached the fiduciary duty to act in Loury's best interest when "[p]laintiff willfully ignored [Loury]'s command and was unwilling to submit an updated claim to [the second judge] via whatever procedure [c]ourt rules allowed," which resulted in $237,000 of additional compensation that Loury

16

"was unable to receive." Count two further stated that "[p]roximate cause for this legal malpractice claim was established during the duration of the new trial in June-July 2017." During motion arguments, Loury's counsel claimed that no expert was needed as the court could grant summary judgment on the counterclaim's count two by applying the common knowledge doctrine. We are not persuaded.

Generally, "[b]ecause the duties a lawyer owes to his client are not known by the average juror, a [client] will usually have to present expert testimony defining the duty and explaining the breach." Stoeckel v. Township of Knowlton, 387 N.J. Super. 1, 14 (App. Div. 2006). We acknowledge that in "rare" cases, "expert testimony is not required in a legal malpractice action where the duty of care to a client is so basic that it may be determined by the court as a matter of law." Sommers, 287 N.J. Super. at 10. For example, "the facts of a given case may be such that a layperson's common knowledge is sufficient to permit a finding that the duty of care has been breached." Ibid. Relatedly, "expert testimony may not be necessary to establish proximate cause in every legal malpractice case, particularly where the causal relationship between the attorney's legal malpractice and the client's loss is so obvious that

A-1452-23

the trier of fact can resolve the issue as a matter of common knowledge." Id. at 11. Accord Lemoine, 272 N.J. Super. at 490.

In its oral decision denying Loury's summary judgment motion, the trial court first outlined the theories advanced by Loury's counsel as to MLF's alleged failures to which the common knowledge doctrine could apply, including:

> Withdrawal of the regular calendar in limine motion, provide Mr. Loury with requested advice . . . , reply to Mr. Loury's two e-mail and attachment sets, strategize with Mr. Loury on how to use Mr. Argush's new testimony in evidence, communicate with Mr. Loury properly, explain to Mr. Loury his risks and options in seeking a new and higher damage award, confirm Concord's liability to Mr. Loury[] . . . during cross-examination given Mr. Argush's new rev[enue] testimony in evidence, not offer Mr. Argush a bargain that was detrimental to Mr. Loury's purposes [and] contrary to Mr. Martin's advocacy/fiduciary obligation, place Mr. Loury's damages in contest and dispute through a new order for [the second judge] to consider.

However, even assuming "for the sake of argument that each of these theories establish[es] carelessness that is readily apparent to . . . a juror of average intelligence," the trial court questioned whether Loury could establish that "there was a causal relationship between this alleged malpractice and the injury that" Loury alleged. In other words, while the court "agree[d] that perhaps the common knowledge doctrine could be utilized for something along the lines of replying to Mr. Loury's two e-mail and attachment sets," it found

18

that Loury did not "have anyone to establish damages" as "there's no evidence in the record . . . to establish here that Mr. Loury who prevailed before [the second judge] could have further prevailed" for a greater award "even if everything had gone the way that Mr. Loury now asserts that it should have." The court explained:

> Expert testimony is most certainly needed here . . . relating to the damages that are sought. . . . [T]he issue . . . has also been the fact that [the second judge] had ruled in favor of Mr. Loury and . . . there's no one to establish how any of that would have changed. And certainly that requires a high level of technical analysis which we just don't have here.

The court further noted that the following were "all technical legal matters that go beyond the average intelligence and . . . ordinary experience of members of the jury:" "strategizing with Mr. Loury on how to use Mr. Argush's new testimony, explaining to Mr. Loury his risks and options in seeking a new and higher damage award, [and] confirming conference liability to Mr. Loury's agreement during cross-examination given Mr. Argush's new revenue testimony in evidence." Thus, the court declared that it could not find "that the common knowledge doctrine applies . . . [as] the claims asserted here require a high level of technical expertise that go[es] beyond the average intelligence and ordinary experience of . . . the average juror here."

19

Reviewing the record de novo, we are satisfied that regardless of whether the common knowledge doctrine applies, there were genuine issues of material fact that precluded the grant of Loury's motion for summary judgment.

Ordinarily, questions of proximate cause are left to the jury for its factual determination. Komlodi v. Picciano, 217 N.J. 387, 419 (2014); Beadling v. William Bowman Assocs., 355 N.J. Super. 70, 88 (App. Div. 2002). Here, reasonable minds could differ as to the material facts concerning the existence of proximate cause and the amount of damages claimed by Loury. Indeed, as the trial court aptly noted, even if MLF had followed Loury's email requests and called Loury to rebut Argush's testimony, a jury might find that those actions would not have changed the second judge's ultimate damages award, since the judge had already rejected Argush's testimony without rebuttal, accepted Loury's theory of damages under the employment contract, and found the amount of reasonable damages was "not contested."

Furthermore, even if the jury found legal malpractice using its common knowledge, reasonable minds could differ as to the amount of actual damages. We reiterate that "if reasonable minds could differ [on any material fact], the motion must be denied." Brill, 142 N.J. at 535 (quoting Lanzet, 126 N.J. at 174).

A-1452-23

Finally, we address Loury's contention that the trial court erred by denying his motion for leave to amend his counterclaim to add Martin as an individual codefendant. Loury sought to add Martin individually because count one of Loury's counterclaim concerned alleged legal malpractice with respect to the pretrial motion in limine that Martin filed while working at Archer & Greiner, P.C. (Archer), before he formed MLF.[2] We conclude the court did not err in denying Loury's motion, as the amendment Loury requested is barred by the six-year statute of limitations (SOL) for legal malpractice claims, does not "relate back" to the filing of Loury's original answer and counterclaim pursuant to Rule 4:9-3, and therefore would be futile.

Beginning with the applicable legal principles, Rule 4:9-1 provides, in pertinent part:

> A party may amend any pleading as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is to be served, and the action has not been placed upon the trial calendar, at any time within 90 days after it is served. Thereafter a party may amend a pleading only by written consent of the adverse party or

---

[2] Specifically, Loury alleged that "[p]laintiff" breached his fiduciary duty by filing the motion in limine on the regular motion calendar, thereby violating Rule 4:25-7(b), Appendix XXIII.

> by leave of court which shall be freely given in the interest of justice.

Generally, a motion for leave to amend is "to be liberally granted and without consideration of the ultimate merits of the amendment." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:9-1 (2026). "Liberality is . . . required irrespective of the stage of the proceedings at which the amendment is sought provided no adverse party is prejudiced thereby." Zacharias v. Whatman PLC, 345 N.J. Super. 218, 226 (App. Div. 2001).

"While motions for leave to amend pleadings are to be liberally granted, they nonetheless are best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made." Fisher v. Yates, 270 N.J. Super. 458, 467 (App. Div. 1994). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Notte v. Merchants Mut. Ins. Co., 185 N.J. 490, 501 (2006). An amendment is futile or not legally sustainable when "there is no point to permitting the filing of an amended pleading" because "a subsequent motion to dismiss must be granted." Rodriguez v. Shelbourne Spring, LLC, 259 N.J. 385, 404-05 (2024) (quoting C.V. ex rel. C.V. v. Waterford Twp. Bd. of Educ., 255 N.J. 289, 306 (2023)).

Moreover, "a motion to amend [is] properly denied where its merits are marginal, its substance generally irrelevant to the main claim, and allowing the amendment would unduly protract the litigation or cause undue prejudice." Pressler & Verniero, cmt. 2.2.1 on R. 4:9-1. Such a denial is also sustainable when made on the eve of trial, particularly if the motion seeks to add new parties. Morales by Martinez v. N.J. Acad. of Aquatic Scis., 302 N.J. Super. 50, 56 (App. Div. 1997); Globe Motor Car Co. v. First Fid. Bank, N.A., 291 N.J. Super. 428, 429 (App. Div. 1996) (court did not abuse its discretion in denying motion to amend made on eve of trial and three years after the complaint was filed). "[T]he factual situation in each case must guide the court's discretion, particularly where the motion is to add new claims or new parties late in the litigation." Bonczek v. Carter-Wallace, Inc., 304 N.J. Super. 593, 602 (App. Div. 1997).

Here, in denying Loury's motion, the trial court explained that its "biggest concern" was "the statute of limitations issue." The court noted that Loury had retained Archer in 2011; Martin had filed the motion in limine in December 2012 while working at Archer; and then Loury had retained Martin at his own firm, MLF, in February 2016. Applying "the most generous liberal view" of those events, the court found that the six-year statute of limitations "would have run [on any malpractice claims against Martin at Archer] as of February 2022,"

thus making Loury's May 2023 amendment motion futile and not legally sustainable.

It is undisputed that a claim of legal malpractice is subject to a six-year statute of limitations. McGrogan v. Till, 167 N.J. 414, 419 (2001). However, the fact that an amendment to a pleading is filed after the expiration of the statute of limitations is not automatically fatal, as Rule 4:9-3 authorizes the "relation back" of amended pleadings to their original filing. Specifically, the Rule provides:

> Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading; but the court, in addition to its power to allow amendments may, upon terms, permit the statement of a new or different claim or defense in the pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, that party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.
>
> [(Emphasis added).]

The trial rejected Loury's argument that the relation back doctrine tolled the six-year statute of limitations for count one of the counterclaim. The court explained that

> in order for the relation-back doctrine to apply, the party seeking the amendment needs to establish that the party against whom the amendment is sought received notice of the institution of the action, that the party will not be prejudiced in maintaining a defense on the merits and also knew or should have known that but for a mistake concerning the identity of the proper party, the action would have been brought against the party to be brought in by amendment.

Applying those principles, the court determined it would be "a little bit more tenuous" if Loury was trying to add Archer to the counterclaim, but there was "no question that Mr. Martin received notice here." "[T]he bigger problem," however, was that this was not "a case of mistaken identity" as required by <u>Rule</u> 4:9-3's second prong. The court explained:

> No one can say that Mr. Loury did not know that Mr. Martin did not represent him. No one can say that . . . Loury did not know that Mr. Martin represented him at Archer. Mr. Loury was a part of those proceedings. He was very aware. As this litigation has played out, he's a very involved and active member of the litigation. He's serving as his own expert here, in fact.
>
> So this isn't a case where we have someone who's misidentified on a police report and it's later rectified or a junior is substituted for a senior as we see plays out sometimes or, you know, a middle name is used instead

of a first name. I mean, these are the scenarios that I typically see come under the Rule 4:9-3 purview. But this isn't mistaken identity.

And while I agree that Mr. Martin had notice of this action and he himself has likely been involved, he's been involved to the extent that it's his firm that was named here and not him. I think it would be highly prejudicial at this point to now where an apparent choice was made not to name him individually to now allow him to be named and allow it to relate back thwarting the statute of limitations here would be I think extremely prejudicial to Mr. Martin, especially where we are not only on the eve of trial, we're actually past the trial date. I need to give you guys a new trial date. Discovery is completed. And it's now many, many years past the statute of limitations period.

In sum, the trial court found that this is "a case where Mr. Loury knew the identity of Mr. Martin, opted not to name him individually, and cannot now be afforded that opportunity where the statute of limitations has run." On those grounds, the court denied Loury's motion to amend the counterclaim to name Martin individually.

In Loury's motion for reconsideration, Loury's counsel argued that the statute of limitations did not end until "at least February of 2022" or "more likely 2025" due to tolling by the discovery rule. Relying on Otchy v. City of Elizabeth Board of Education, 325 N.J. Super. 98 (App. Div. 1999), and Pantano v. New York Shipping Ass'n, No. A-3869-19 (App. Div. Jun. 8, 2022), aff'd on other

grounds, 254 N.J. 101 (2023), Loury further argued that the relation back doctrine in Rule 4:9-3 applied here because there was

> an indistinguishable identity of interest here. The parties are so closely . . . related in their business operations and activities that notice to one is notice to the other. There's imputed notice due to the substantial identify [sic] . . . Martin equaled Martin Law Firm. I mean he was the law firm. He was the sole owner. He had notice of this litigation.
>
> . . . .
>
> . . . . [T]he bottom line on the issue of adding Mr. Martin is that Martin knew or he should have known that but for this error in identifying him individually, the action would have been brought against him.

The trial court did not accept Loury's argument, although it reconsidered its findings "with regard to the timing of the statute of limitations." Citing Grunwald v. Bronkesh, 131 N.J. 483 (1993), the court candidly acknowledged that it was "not exactly sure when" Loury suffered actual harm or damage from any alleged malpractice or when he should have discovered the facts essential to his malpractice claim through the use of reasonable diligence. The court explained:

> I think the argument is that that should have been discovered in 2012 based on when the motion in limine was filed, but I'm a little unclear about that. Obviously, Mr. Martin was initially at Archer in 2011, and then . . . the retainer was signed by Mr. Loury with regard to

27

Mr. Martin at [MLF] in 2016. [W]hat I'm not sure of is when Mr. Loury suffered actual damage or discovered the facts essential to the malpractice claim, so I am willing to reconsider myself on that.

Nonetheless, the court ultimately denied Loury's motion for reconsideration. It found that reconsidering the timing of the statute of limitations did not "change[] the outcome in this case," as Martin was "a new party," and "this is not a situation of mistaken identity" or "an error of identification," The court added:

Mr. Loury did not file a third-party complaint against Mr. Martin individually. And, so while Mr. Martin may have had notice about this action, because his firm was named, the fact is there's no indication that he knew or should have known of an error of identification. That's not what we have here.

Loury argues on appeal that the trial court erred by finding the statute of limitations barred his malpractice claims against Martin as an individual counterclaim codefendant. Relying on Gautam v. DeLuca, 215 N.J. Super. 388 (App. Div. 1987), he asserts that the statute of limitations was not triggered or discovered until he suffered new legal costs when, in February 2016, we ordered a remand and a second bench trial. Loury therefore posits that his damages from Martin's malpractice were well within the six-year deadline ending in February 2022 since the counterclaim was filed in September 2019.

28

Determining whether a cause of action is barred by a statute of limitations is a question of law that is reviewed de novo. Catena v. Raytheon Co., 447 N.J. Super. 43, 52 (App. Div. 2016). While Loury's reliance on Gautam is misplaced,[3] we nonetheless agree with his argument that the six-year statute of limitations was not triggered until he suffered new legal costs in February 2016, when we ordered a remand and a second underlying trial partially based on Martin's use of the motion in limine. The law is well-settled that "[o]rdinarily, a cause of action 'accrues when an attorney's breach of [their] professional duty proximately causes a [client]'s damages.'" Vastano v. Algeier, 178 N.J. 230, 236 (2003) (quoting Grunwald, 131 N.J. at 492). However, our Supreme Court has "recognized . . . the unfairness of an inflexible application of the statute of limitations when a client would not reasonably be aware of 'the underlying factual basis for a cause of action' to file a timely complaint." Ibid. (quoting

---

[3] Gautam is distinguishable because it specifically concerned whether clients could recover damages for the mental anguish and emotional distress allegedly caused by the legal malpractice of their former attorneys. Id. at 390-92. In Gautam, we reversed the jury award to the clients for both compensatory and punitive damages because of inadequate jury instructions but concluded that a remand was unnecessary because "the evidence was wholly insufficient to support a recovery of either compensatory or punitive damages." Id. at 394-96. We found that an injured client in a malpractice action could be recompensated for "economic loss," not emotional distress damages, as their attorney-client relationship was predicated upon economic interest only. Id. at 400.

Grunwald, 131 N.J. at 492-93). "To guard against that inequity, we have applied the discovery rule in those cases in which the injury or wrong is not readily ascertainable through means of reasonable diligence." Ibid.

Stated another way, under the discovery rule, the cause of action accrues when "the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim." Rogers v. Cape May Cnty. Off. of Pub. Def., 208 N.J. 414, 422 (2011) (quoting Grunwald, 131 N.J. at 494). See also Vastano, 178 N.J. at 242 (cause of action accrued when, after firing attorney, clients "took their file [and] . . . possessed all the information necessary to reveal malpractice without resort to the interpretative assistance of an expert"). The party seeking to take advantage of the "discovery rule" and thereby avoid dismissal of their pleading under a statute of limitations has the burden of persuasion on that issue. Kendall v. Hoffman-La Roche, Inc., 209 N.J. 173, 194 (2012); R.L. v. Voytac, 199 N.J. 285, 300 (2009).

In this instance, applying the discovery rule does not bring Loury's malpractice claim against Martin within the six-year deadline for the motion in limine. Loury retained Archer in 2011. Martin filed the motion in limine in 2012, and left Archer to form MLF in 2015. On February 11, 2016, we reversed

30

and remanded the entire matter for a second bench trial, and the statute of limitations began to run on any malpractice claim. Loury filed his counterclaim for legal malpractice against only MLF with his answer in 2019. The statute of limitations ran out for the motion in limine malpractice claim on February 2022, as the trial court determined. Loury, however, did not move to amend his counterclaim to add Martin for count one until May 2, 2023, after the statute of limitations had run.

We add there is no information in the record that Archer had any notice of Loury's malpractice claims prior to the expiration of the statute of limitations, or that Archer knew or should have known that Loury would complain about the motion in limine filed by Martin in 2012. Applying de novo review, we hold the relation back doctrine does not apply in these distinctive circumstances. We add that neither Otchy nor Pantano provide any factual or legal support for a different conclusion based on the present facts.

In the final analysis, we are not persuaded that the trial court erred in denying Loury's motion to amend count one of his counterclaim to include Martin as a codefendant.

31

To the extent we have not specifically addressed them, any remaining arguments raised by Loury lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-1452-23